Napton, judge,
delivered the opinion of the court.
This was a bill in chancery filed by Angney, Price and Davison to enjoin further proceedings upon an execution issued in favor of Cole county against Wells and Barcroft and levied on certain lands claimed by the complainants.
The bill stated, that on the 29th June 1842, they became the purchacers of certain lots and land, lying in the City of Jefferson and county of Cole, at public sale made by the sheriff under sundry executions issued against John W. Wells and levied on said land and lots and that they received deeds from the sheriff duly executed and acknowledged. The bill further states, that in 1838, John W. Wells became the purchaser of a portion of the 16th sec. in township 45 and R. 13, and gave his bond to the county of Cole with Elias Barcroft as security for the *134 ■payment of the purchase money ; that the county of Cole obtained a judgment against said Wells and Barcroft in 1842, (at the June term) and that an execution was issued and levied upon the land above stated to have been purchased by the complainants; that Barcroft has sufficient unincumbered property to satisfy the said execution, but that Cole county claims a priority of lien on Wells’ land by virtue of the 15th section of the 6th article of the act regulating common schools, approved February 9th 1839. An injunction is therefore prayed to stay proceedings, until all the other property of Wells and Barcroft is exhausted.
A variety of proceedings took place subsequent to the filing of this bill, but they were all finally withdrawn and a demurrer filed. The court overruled the demurrer and thereupon enjoined the county of ■Cole from proceeding further upon her execution against the land specified in the bill, until she had exhausted the estate of Barcroft, the security of Wells.
The question proposed to be settled by this appeal, is understood to be, the right of the county of Cole, under the 15th section of the 6th article of the act concerning common schools, to a priority in the lands sold to the complainants ; but the facts necessary to an understanding of the subject are not presented by the record. The bill after setting forth the title of the complainants, alleges, that the county had caused the land to be levied on, and was about to have it sold, under a pretence ■or claim that a lien was given to her under the law above referred to ; but the facts, which would be essential to show the rights of the county are not stated. It does not appear, except inferentially, that Wells, the principal in the land, was insolvent or had made a general assignment of his property, and it does not appear, if this was the case, at what time the insolvency occurred, or the assignment was made. The priority given to the county by the school law, in the section referred to, is not unlike that preference or lien which the United States have retained over the property of accounting and disbursing officers and others by the 5th section of the act of 1789. The right of preference of the United States, was given by that law, where there was a legal insolvency, or a voluntary assignment of all the property for the benefit of creditors, or death; but if, under that law, before the assignment, insolvency or death, the debtor made a bona fide conveyance of his estate to a third person or mortgaged it to secure a debt or his property was seized by a fi.fa., and divested out of the debtor, it was always held, that such property could not be made liable to the claim of the United *135 States. A judgment was a mere lien, and as such, was defeated by the prior lien of the United States, but a sale under execution or other act having the effect of transferring the property, passed the title. Thelusson vs. Smith 2 Whea. R.
The same priority is given by the act concerning common schools, to the state or county, in case an officer having school funds in his hands or a debtor who has borrowed it, becomes insolvent or bankrupt, or makes a general assignment of his property. Whether the facts in the present case would warrant the county in proceeding against the land sold to the complainants, does not appear.
The circuit court entered up a decree upon overruling the demurrer. Such a cause is unauthorized by the practice in chancery. It might be done by consent, the parties agreeing to abide by the facts as presented in the bill; but in this case no such consent appears, and if it had, there is the further difficulty that the complainants made out no case for an injunction. A demurrer in chancery is unlike one at law : “ It is an allegation of the defendant, which admitting the matters of fact alleged by the bill to be true, shows, that as they are therein set forth, they are insufficient for the plaintiff to proceed upon or to oblige the defendant to answer; or that for some reason apparent on the face of the bill, or because of the omission of some matter, which ought to be contained therein, or for want of some circumstance, which ought to be attendant thereon, the defendant ought not to be compelled to answer. It therefore demands the judgment of the court, whether the defendant shall be compelled to answer the complainant’s bill or to some certain part thereof.” Story’s PI. S. 446. Admitting the demurrer to have been properly overruled, the only effect of such a step was to compel the defendant to answer. To bring up the question of the contraction of the law concerning common schools, the defendant might have set forth the facts in a plea, not disclosed in the bill, by which he could have alleged matter, which had it appeared upon the face of the bill would have been a good cause for demurrer.
If it was the design of the bill to rely upon the right to an injunction, upon the sole ground that Barcroft the security, had property, and that the county must, whether the priority alluded to existed or not, first exhaust Barcroft’s property, before she could resort to the land of Wells, sold under prior executions, the bill was properly demurred to. A court of equity would not interfere in ,such a case. The county who is creditor may exercise her choice in pursuing either the principal or security, but if the debt is made out of the security, he has *136 an unquestioned right to be substituted in the place of the creditor and to avail himself of every preference and lien which the law has given the creditor. So that it is apparent that the interference of the court would only tend to a multiplicity of suits. The county in this case has ■selected to resort to every right which the law gives her to secure the debt out of the property of the principal debtor, and a court of equity would hardly interfere to prevent her from taking this course, when, if the security is compelled to pay the debt, he can immediately turn round, place himself in the shoes of the creditor, and avail himself of every lien and preference which the law has given the creditor.
It may be a question proper to be examined, whether, if the facts were altogether as the complainants suppose them to be, and the construction of the act should be in conformity to their views, the case would be a suitable one for interference by injunction, To arrest the sale of land levied on under an execution issued from a court of law, upon the sole ground, that the land does not belong to the defendant in the execution or has passed from him, before the levy, is certainly a novel exercise of chancery jurisdiction. We will not say, that circumstances may not render such a step proper, but it would seem that the ■only effect of such a proceeding must be to anticipate a question of title, most properly and peculiarly appropriate to a court of law.
If the facts be as the case supposed, the purchaser can acquire no title nor can the sale affect or disturb the rights of those who have the title. The purchaser must resort to his ejectment, before he can get possession and why interfere by way of injunction ? A person desiring to purchase at such a sale might desire the qustion of title to be settled, before venturing on the purchase, but the real owner, whoever he may be, can have but little interest in the matter. A sale cannot injure him or impair his title. If it were personal property, the case would be altered, to some extent—although I have never known or read of a ease of injunction to restrain the sale of personal chattels, merely upon the ground that they do not belong to the defendant in the execution. A more convenient mode of settling the question of title, in regard to personal property, is provided for by statute.
Judge McBride concurring the decree will be reversed and the cause remanded.
Scott, judge, not sitting.